STATE ex rel. FORD, Relator, *v.* YOUNG et al.,
RESPONDENTS.

(Nos. 4,136 and 4,137.)

(Submitted January 28, 1918.   Decided February 2, 1918.)

[170 Pac. 947.]

*Nuisances—Brothels—Abatement—Injunction—Powers of Attorney General—Statutes—Common Law.*

Nuisances—Abatement—Powers of Attorney General.
    1.   *Held,* that the authority of the attorney general conferred by the Constitution, the statutes and the common law, to institute and prosecute in the name of the state proceedings to abate, as nuisances, buildings used as common brothels or bawdy-houses, was not abridged by the provision of Chapter 95, Laws of 1917, under which the county attorney must, or any citizen of the county may, maintain a like action, the purpose of such provision being to supplement, not to supersede, existing statutes.
    [As to who may obtain an injunction against a public nuisance, see note in 67 Am. Dec. 203.]

Attorney General—Common-law Duties.
    2.   The office of the attorney general as it existed in England under the common law was adopted as a part of the governmental machinery of this state, and in the absence of express restrictions, the common-law duties of that officer attach themselves to the office so far as they are applicable and in harmony with our system of government.

As to injunction at suit of state against public nuisance which is also a crime, see notes in 15 L. R. A. (n. s.) 747; 23 L. R. A. (n. s.) 691; 33 L. R. A. (n. s.) 325.

On right of owner or occupant of neighboring property to enjoin the maintenance of a house of prostitution, see notes in 11 L. R. A. (n. s.) 1060; 42 L. R. A. (n. s.) 1041.

*Appeal from District Court, Hill County; W. B. Rhoades, Judge.*

Two PROCEEDINGS by the State, on the relation of S. C. Ford, Attorney General, against C. W. Young and others.   From an order in each suit refusing to dissolve a temporary injunction, defendants appeal.   Affirmed.

*Mr. O. W. McConnell* and *Messrs. Donnelly & Carleton,* for Appellants, submitted a brief; *Mr. Jos. P. Donnelly* argued the cause orally.

*Mr. S. C. Ford,* Attorney General, for Respondent, and *Mr. A. A. Grorud,* Assistant Attorney General, submitted a brief, and *Mr. Ford* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The state, on the relation of the attorney general, seeks by injunction to close certain buildings in the city of Havre, which it is alleged are being used as common brothels or bawdy-houses. The defendants have appealed from an order (in each suit) refusing to dissolve a temporary injunction.

No question is raised as to the scope of the injunction issued. [1] Appellants' only contention is that the attorney general is without authority to institute these proceedings, and in support of this contention they invoke the provisions of Chapter 95, Laws of 1917. Section 2 of that Chapter includes certain buildings and places within the definition of "nuisance." Section 3 provides: "Whenever there is a reason to believe that such nuisance is kept, maintained, or exists in any county of the state of Montana, the county attorney must, or any citizen of the county may, maintain an action in equity in the name of the state of Montana upon the relation of such county attorney or citizen, as the case may be, to abate and prevent such nuisance."

Prior to the enactment of Chapter 95, the term "nuisance" was defined by section 6162, Revised Codes, and "public nuisance" by section 6163. As against a public nuisance, the remedies available were criminal prosecution, civil action, or abatement. (Sec. 6169.) The language employed in these statutes is very general in its terms. The definitions of "nuisance" and "public nuisance" are substantially those of the common law. (3 Blackstone, 216.) Section 6169 does not indicate the character of civil remedy available nor the party plaintiff who might invoke the remedy. These questions were referable for solution to the rules which governed the usual course of practice in the courts at the time the statute was enacted.

By section 11, Article VIII, of our state Constitution, the district courts are clothed with general equity jurisdiction. At the time of the adoption of the Constitution and for many years before, courts of equity in England and America exercised jurisdiction for the suppression of nuisances—public as well as private. (*Attorney General* v. *Richards,* 2 Anstr. 603; 5 Pomeroy's Equity Jurisprudence, sec. 479; 2 Story's Equity Jurisprudence, secs. 921, 923.) The right of the state to maintain these suits independently of Chapter 95 cannot be questioned (Joyce on Nuisances, secs. 366, 437), but the state cannot act *sua sponte.* Someone authorized to do so must act on its behalf. May the attorney general do so?

The office of attorney general is of ancient origin. The powers and duties appertaining to it were recognized by the common law, and the common law has been a part of our system of jurisprudence from the organization of Montana territory to the present day. (Bannack Statutes, p. 356; Comp. Stats., p. 647; Rev. Codes, sec. 3552.) In this state the office of attorney general is created by our state Constitution (sec. 1, Art. VII), which also provides that the incumbent of the office "shall perform such duties as are prescribed in this Constitution and by the laws of the state." The Constitution enumerates certain duties, and section 193, Revised Codes, certain others, and then concludes by imposing upon the attorney general "other duties prescribed by law." It is the general consensus of opinion that in practically every state of this Union [2] whose basis of jurisprudence is the common law, the office of attorney general, as it existed in England, was adopted as a part of the governmental machinery, and that in the absence of express restrictions, the common-law duties attach themselves to the office so far as they are applicable and in harmony with our system of government. (6 Corpus Juris, 805, 809; 2 R. C. L., p. 916; *Hunt* v. *Chicago, H. & D. Ry. Co.,* 121 Ill. 638, 13 N. E. 176; *Ex parte Young,* 209 U. S. 123, 14 Ann. Cas. 764, 13 L. R. A. (n. s.) 932, 52 L. Ed. 714, 28 Sup. Ct. Rep. 441; *State* v. *Robinson,* 101 Minn. 277, 20 L. R. A. (n. s.) 1127,

112 N. W. 269.) Among the duties especially enjoined upon the attorney general at common law was "by information to chancery to enforce trusts and prevent public nuisances." (*People* v. *Miner,* 2 Lans. (N. Y.) 396; 2 R. C. L. 916.) In *Attorney General* v. *Forbes,* 2 Mylne & C. 123, Lord Chancellor Cottenham said: "In informations and proceedings for the purpose of preventing public nuisances, the ordinary course is for the attorney general to take it on himself to sue as representing the public." In *City of Georgetown* v. *Alexandria Canal Co.,* 12 Pet. (U. S.) 91, 9 L. Ed. 1012, it is said that it is "now settled that a court of equity may take jurisdiction in cases of public nuisances by an information filed by the attorney general." To the same effect are *Coosaw Min. Co.* v. *South Carolina,* 144 U. S. 550, 36 L. Ed. 537, 12 Sup. Ct. Rep. 689; *Attorney General* v. *Jamaica Pond Aqueduct Corp.,* 133 Mass. 361; *People* v. *Truckee Lumber Co.,* 116 Cal. 397, 58 Am. St. Rep. 183, 39 L. R. A. 581, 48 Pac. 374; *State* v. *Lord,* 28 Or. 498, 31 L. R. A. 473, 43 Pac. 471; Joyce on Nuisances, sec. 437.

It cannot be questioned that prior to the enactment of Chapter 95 these suits might have been maintained by the state on the relation of the attorney general, for a bawdy-house was a public nuisance at common law (4 Blackstone, 168), and also under section 6163 above. What, then, is the effect of the provisions of Chapter 95? We shall not stop to consider whether it is competent for the legislature to abridge the powers of the attorney general's office, for in our opinion it has not undertaken to do so by this statute. Chapter 95 does not undertake to define a nuisance, but to enlarge the definition of the term as given by prior statutes. It does not create a new remedy, but makes certain the extent of the relief obtainable. It does not supplant the attorney general as a proper party who may invoke the remedy on behalf of the state, but extends the law by conferring upon the private citizen the right, and upon the county attorney the duty, to suppress the particular nuisances mentioned, by the restraining process of a court of equity. The purpose of Chapter 95 is to supplement, not to supersede, exist-

ing statutes. The case of *State ex rel. Nolan* v. *District Court*, 22 Mont. 25, 55 Pac. 916, is not in point here, but in principle it sustains these views rather than militates against them. Decided cases are to be found which deny to the attorney general the authority to institute such a suit under like circumstances, but we are not impressed with their reasoning, and prefer to adopt the view that these suits are properly entitled, and that the attorney general has not transcended the authority conferred upon him by the Constitution, the statutes, and the common law.

The order in each instance is affirmed.

*Affirmed.*

MR. JUSTICE SANNER concurs.

MR. CHIEF JUSTICE BRANTLY, being absent, did not hear the argument, and takes no part in the foregoing decision.