348 A.2d 900

**Richard H. GWINN, Appellant,**

**v.**

**Robert P. KANE et al.**

Supreme Court of Pennsylvania.

July 7, 1975.

Opinion Nov. 26, 1975.

Decision July 7, 1975.

270

Jerome R. Richter, Blank, Rome, Klaus & Comisky, Philadelphia, for appellant.

Michael L. Levy, Asst. Atty. Gen., Philadelphia, for appellees.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

PER CURIAM.

The order of the Commonwealth Court is affirmed. 339 A.2d 838. Opinion to follow.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant Richard H. Gwinn brought this action in quo warranto in the Commonwealth Court against then Attorney General Israel Packel [1] and Walter Phillips, a deputy attorney general in charge of the "Office of the Special Prosecutor, Department of Justice." It challenges the appointment of Phillips as a special attorney superseding the District Attorney of Philadelphia in certain matters.[2] On cross-motions for summary judgment, the Commonwealth Court concluded that there was no disputed issue of material fact and that Phillips had been validly appointed as a special attorney. This appeal ensued.[3] We affirm.[4]

1. Robert Kane was substituted as a party when he replaced Packel as Attorney General.

2. In the Commonwealth Court, appellant also raised certain contentions regarding Mark A. Klugheit and Ronald G. Cole, assistant attorneys general in the Office of the Special Prosecutor. These contentions were rejected by the Commonwealth Court and appellant does not pursue them on appeal.

3. See Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 203, 17 P.S. § 211.203 (Supp.1975).

4. We entered an order on July 7, 1975, affirming the order of the Commonwealth Court and noting that an opinion would follow. This is that opinion.

Some of the background facts in this case are well summarized in this Court's opinion in *In Re Investigation of January 1974 Philadelphia Grand Jury*, 458 Pa. 586, 587, 328 A.2d 485, 486-87 (1974):[5]

"In June of 1972 Judge Harry A. Takiff convened and charged a grand jury, upon the petition of the District Attorney, to investigate various aspects of official corruption in the City of Philadelphia. . . . During the term of that grand jury twenty-one presentments were made identifying pervasive and systematic corruption and other criminal acts among other public officials and employees, and numerous indictments were recommended. In addition, the June 1972 grand jury issued a final report in January of 1974 wherein it recommended that a new investigating grand jury be convened 'very promptly' to inquire further into the distribution of narcotics and related payoffs to policemen, and kickbacks required of architects, engineers, milk company executives and other businessmen in exchange for procuring public contracts.

"Judge Takiff was also assigned to supervise the January 1974 grand jury. Although the new District Attorney who took office in the beginning of January 1974 had taken no action in response to the recommendations of the June 1972 grand jury, two citizens' groups had petitioned Judge Takiff requesting such an investigation. These petitions . . . were rendered moot on January 31, 1974, however, when Judge Takiff charged the grand jury on his own action to conduct an investigation into nine specified areas [of official corruption]. In order to effectuate this charge, the term of the grand jury was extended indefinitely and the grand jury was directed to reconvene, following completion of business, on February 11, 1974. Ad-

5. Other litigation involving this investigation is reported in *Packel v. Mirarchi*, 458 Pa. 602, 327 A.2d 53 (1974) and *Packel v. Takiff*, 457 Pa. 14, 321 A.2d 649 (1974).

ditionally, Judge Takiff requested the District Attorney to assign members of his staff to handle the investigation being conducted by the grand jury. The District Attorney, however, declined to comply with Judge Takiff's request and subsequent order to assign members of his staff to conduct these investigations.

"Following the District Attorney's refusal to comply with Judge Takiff's order, President Judge Jamieson advised the Attorney General of the Commonwealth by letter that in his judgment the matter was appropriate for intervention by the Commonwealth and requested him, pursuant to the [Administrative Code of 1929,] Act of April 9, 1929, P.L. 177, art. IX, § 907, 71 P.S. § 297, to assign a special attorney or attorneys to represent the Commonwealth, attend the January 1974 grand jury and perform all the duties and responsibilities in connection therewith." (footnote omitted)

On March 11, 1974, shortly after President Judge Jamieson made this request, the Pennsylvania Crime Commission issued a *Report on Police Corruption and the Quality of Law Enforcement in Philadelphia* asserting that there was pervasive police corruption in that city. It recommended appointment of a statewide special prosecutor to investigate and prosecute corrupt practices by government officials throughout the Commonwealth.

██ On March 26, 1974, the Attorney General appointed Phillips as a deputy attorney general,[6] and directed him to organize the "Office of the Special Prosecutor" [7] to continue the investigation of official cor-

**6.** A commission for this appointment was issued on April 1, 1974. The Attorney General is authorized to appoint deputy attorneys general by the Administrative Code of 1929, Act of April 9, 1929, P.I. 177, art. IX, § 906, 71 P.S. § 296 (1962).

**7.** Appellant attempts to treat this sequence of events as an appointment of Phillips to the non-existent office of "Special Prosecutor of the Commonwealth of Pennsylvania," relying on the fact that he is frequently referred to informally as "the Special Prosecutor" or "Special Prosecutor Phillips." In fact, however, there is simply an administrative unit, designated the "Office of the

ruption in Philadelphia begun by the Pennsylvania Crime Commission.[8] On March 28, 1974, the District Attorney of Philadelphia was notified that he was being superseded by the Attorney General in the task of investigating and prosecuting police corruption in Philadelphia and that all allegations of such corruption should be referred to Phillips. On May 1, 1974, the Attorney General informed President Judge Jamieson that, pursuant

---

Special Prosecutor," of which Phillips, a deputy attorney general, is the head. This error pervades appellant's argument and several of his contentions are premised upon it.

**8.** The Department of Justice, of which the Attorney General is the head, is charged by section 904 of the Administrative Code of 1929 with the following duties:

"(a) To investigate any violations, or alleged violations of the laws of the Commonwealth which may come to its notice;

"(b) To take such steps, and adopt such means, as may be reasonably necessary to enforce the laws of the Commonwealth."

Act of April 9, 1929, P.L. 177, art. IX, § 904, 71 P.S. § 294 (1962).

Appellant makes much of the fact that the Office of the Special Prosecutor is authorized to exercise "statewide jurisdiction," characterizing this as a "power to roam throughout the Commonwealth and to supersede local district attorneys in all 67 counties of the Commonwealth." Brief for appellant at 16. Of course the decision to supersede a district attorney, whether pursuant to section 907 or under whatever common law authority may be possessed by the Attorney General, is entrusted solely to the Attorney General and may not be delegated. But there has been no such delegation here.

The Office of the Special Prosecutor currently purports to exercise powers derived from three distinct sources. First, it relies upon the general power of the Department of Justice, as conferred by section 904 and other provisions of law. This power extends throughout the Commonwealth. Second, it claims powers derived from the Attorney General's action pursuant to section 907 of the Administrative Code of 1929, as will be indicated. These powers are confined to the City of Philadelphia. Third, it asserts powers derived from the Attorney General's common law supersession of the district attorney in all cases involving police corruption. These powers are likewise confined to the City of Philadelphia.

As will appear, we sustain the actions of the Office of the Special Prosecutor relevant to this case solely upon the second ground, and thus have no need to decide what powers may flow from the other sources. However, it is clear that insofar as the general powers of the Department of Justice are relied upon, the Office of the Special Prosecutor exercises some "statewide jurisdiction" whose precise extent need not concern us in this case.

to his request, Phillips and his staff were being directed to "man" the January 1974 Philadelphia Grand Jury (hereafter, the Grand Jury).

The Grand Jury, with the assistance of Phillips and his staff, proceeded with its investigation. On September 11, 1974, it issued a presentment alleging that appellant, the president of a milk company, had committed perjury and false swearing in his testimony before the June 1972 Philadelphia Grand Jury regarding his company's contracts with the city. On September 26, 1974, another grand jury indicted appellant on these charges. Trial on this indictment was scheduled to begin on March 3, 1975, when this action was brought on December 24, 1974.

On December 27, the Commonwealth Court transferred the case here because it concluded that original exclusive jurisdiction to entertain actions in quo warranto involving officers of statewide jurisdiction was in this Court. On January 24, 1975, we retransferred the case to the Commonwealth Court for disposition.[9] After fur-

9. The Commonwealth Court relied upon our decision in *Collins* v. *Gessler*, 452 Pa. 471, 307 A.2d 892 (1973), in support of its belief that it lacked jurisdiction of this case. See *Commonwealth ex rel. Specter v. Dennis*, 10 Pa.Cmwlth. 439, 308 A.2d 915 (1973). *Collins*, however, does not support that proposition. In *Collins*, we simply noted that we had original jurisdiction of that case under section 201(3) of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 201(3), 17 P.S. § 211.-201(3) (Supp.1975), which provides that "The Supreme Court shall have original but not exclusive jurisdiction of: . . . (3) All cases of quo warranto as to any officer of statewide jurisdiction." We nowhere intimated that our jurisdiction in such cases was exclusive. However, because that case touched upon our own supervisory and administrative authority over the judicial system of the Commonwealth and did not present any disputed issues of fact, we chose to dispose of it ourselves rather than retransfer it to the Commonwealth Court, where it had been filed. *Dennis* likewise involved questions of judicial administration.

This case, involving no questions of judicial administration, was clearly within the original jurisdiction of the Commonwealth Court, as conferred by section 401(a)(1) of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. IV, § 401(a)(1), 17 P.S. § 211.401(a)(1) (Supp.1975), which provides:

■

ther proceedings, the Commonwealth Court entered a summary judgment in favor of the defendants and this appeal ensued.

■ The primary issue presented in this appeal is the validity of Phillips'. appointment as special attorney superseding the District Attorney of Philadelphia. Appellees assert here, as they did in the Commonwealth Court, that (1) this question is not properly cognizable in quo warranto [10] and (2) appellant lacks standing to raise it.[11]

"The Commonwealth Court shall have original jurisdiction of: (1) All civil actions or proceedings against the Commonwealth or any officer thereof, acting in his official capacity." Although we had concurrent original jurisdiction of the case, we retransferred to the Commonwealth Court to permit development of a record and findings on any questions of disputed fact which might develop.

10. Appellees interpret appellant's contention to be that the appointment of Phillips as special attorney is invalid only in the sense that it follows from an allegedly invalid supersession of the district attorney. They argue that the validity of the supersession can only be litigated in a proceeding between the district attorney and the Attorney General. See also *Commonwealth ex rel. Minerd v. Margiotti,* 325 Pa. 17, 31, 188 A. 524, 530 (1936) (suggesting that a special attorney does not, as such, hold an "office").

11. The Commonwealth Court predicated its conclusion that appellant has standing on the fact that he is a defendant currently being prosecuted by Phillips in his capacity as special attorney. Appellees contend that appellant's only concern as a defendant is that the prosecution be brought by one entitled to bring such prosecutions on behalf of the Commonwealth. They then argue that, entirely aside from any supersession of the district attorney, such authority is vested in the Attorney General and may be exercised through his deputy, in this case Phillips. See *Commonwealth v. Fudeman,* 396 Pa. 236, 237–39, 152 A.2d 428, 430 (1959); *Commonwealth v. Schwartz,* 210 Pa.Super. 360, 385, 233 A.2d 904, 916 (1967); *Commonwealth v. Marmon,* 210 Pa.Super. 202, 206, 232 A.2d 236, 239 (1967); *Commonwealth v. Wheeler,* 200 Pa.Super. 284, 303–04, 182 A.2d 291, 301 (1963). Consequently, they maintain that appellant's status as a criminal defendant confers no standing upon him to contest the supersession. See also *State Dental Council v. Pollack,* 457 Pa. 264, 318 A.2d 910 (1974). Finally, appellees assert that no other interest alleged by appellant suffices to confer standing under our cases dealing with actions in quo warranto. See *Stroup v. Kapleau,* 455 Pa. 171, 313 A.2d 237 (1933) (opinion announcing the judgment); *League of Women Voters v. Bd. of Comm'rs,* 451 Pa. 26, 301 A.2d 797 (1973); *Dorris v. Lloyd,* 375 Pa. 481, 100 A.2d 599 (1953).

While the Commonwealth Court rejected these contentions, their resolution is not free of difficulty. However, because we agree with the Commonwealth Court that the appointment was proper, appellant is not entitled to relief even if the issue is cognizable in quo warranto and he has standing to raise it. Consequently, we need not resolve those questions.[12]

Appellees maintain that Phillips' appointment as special attorney can be sustained on two independent bases: (1) the common law power of the Attorney General recognized in *Margiotti Appeal,* 365 Pa. 330, 75 A.2d 465 (1950) and *Commonwealth ex rel. Minerd v. Margiotti,* 325 Pa. 17, 188 A. 524 (1936) (alternate holding), and (2) section 907 of the Administrative Code of 1929.[13] As did the Commonwealth Court, we conclude that the statutory basis relied upon by appellees is sufficient and therefore need not decide whether the common law pow-

12. These contentions, if meritorious, would require affirmance of the order of the Commonwealth Court. Thus appellees are free to urge them again in this Court, for we will affirm an order if it is correct for any reason, regardless of the reason relied upon by the court below. *Gilbert v. Korvette, Inc.,* 457 Pa. 602, 604 n.5, 327 A.2d 94, 96 n.5 (1974); *Estate of Prynn,* 455 Pa. 192, 197 n.9, 315 A.2d 265, 267 n.9 (1974).

13. Act of April 9, 1929, P.L. 177, art. IX, § 907, 71 P.S. § 297 (1962). That section provides, in pertinent part:
"When the president judge, in the district having jurisdiction of any criminal proceedings, before any court of oyer and terminer, general jail delivery, or quarter sessions, in this Commonwealth, shall request the Attorney General to do so, in writing, setting forth that, in his judgment, the case is a proper one for the Commonwealth's intervention, the Attorney General is hereby authorized and empowered to retain and employ a special attorney or attorneys, as he may deem necessary, properly to represent the Commonwealth in such proceedings, and to investigate charges, and prosecute the alleged offenders against the law. Any attorney, so retained and employed, shall supersede the district attorney of the county in which the case or cases may arise, and shall investigate, prepare, and bring to trial the case or cases to which he may be assigned. He shall take the oath of office required by law to be taken by district attorneys, and shall be clothed with all the powers and subject to all the liabilities imposed upon them by law."

er of the Attorney General would also sustain the appointment.

Pursuant to section 907, the President Judge of the Court of Common Pleas of Philadelphia informed the Attorney General that he believed that the investigation being undertaken by the grand jury was a proper case "for the Commonwealth's intervention," and requested that he appoint a special attorney. On May 1, 1974, the Attorney General agreed to this request and appointed Phillips as special attorney. The prosecution of appellant is a product of the activities of Phillips in that capacity. Thus, if the statutory appointment is valid, it is of no consequence here whether the purported supersession on March 28, 1974, under the common law powers of the Attorney General is also valid.

Appellant's first attack, based in part on his erroneous belief that Phillips purports to hold the office of "Special Prosecutor of the Commonwealth of Pennsylvania," [14] relies upon dicta in *Smith v. Gallagher,* 408 Pa. 551, 580–81, 185 A.2d 135, 149–50 (1962), which appear to indicate that no such office could constitutionally be created.[15] *Smith* involved an attempt by a single judge of a court of common pleas to appoint a "special prosecutor" to supersede the district attorney in the conduct of a grand jury investigation. The opinion in *Smith* explicitly recognized that the question involved

---

**14.** See note 5 supra.

**15.** Justice Musmanno's opinion for a bare majority of this Court (Justice (now Chief Justice) Jones and Justice O'Brien concurred in the result; Chief Justice Bell filed a concurring and dissenting opinion) contained the following sentence:

"Not only does the office of Special Prosecutor not exist in Pennsylvania but there is no person in Pennsylvania on whom Judge Alessandroni, or even the Pennsylvania Legislature, could bestow the unconstitutional powers and the concomitant unconstitutional immunities implicit in the learned Judge's order."

408 Pa. at 580, 185 A.2d at 149.

there was entirely unrelated to the issue presented in this case: [16]

"What powers the Attorney General may have over district attorneys . . . is a subject for discussion . . . but *that discussion has no place here since our issue is whether a judge on his own initiative may oust a district attorney from the performance of his duties.* In any event, the powers of a single judge cannot be equated with those of the Attorney General where supersession is involved since the judge lacks any statute, common law or decisional authority to act in a supersessional capacity."

Id. at 605, 185 A.2d at 162 (emphasis added). Appellant's attempt to base his attack on these dicta from *Smith* must therefore fail both because he misconceives the office held by Phillips and because *Smith* is totally inapposite on this point.

 Appellant next argues, relying on certain other dicta in *Smith*,[17] that section 907 requires that a presi-

---

**16.** Moreover, the grounds urged in support of the dictum quoted in note 13, supra, do not apply in the type of case presented here. Great reliance was placed on the total lack of accountability of the judicially created "special prosecutor" involved there:

"And in the exercise of this incredible authority Mr. White would not be answerable to anyone for misbehavior or usurpations. Not holding a constitutional office he would not be subject to impeachment; being clothed with judicial sanction he would be immune from criminal prosecution; engaged in governmental business he could not be sued civilly. No person in the United States may constitutionally wear such impenetrable armor against responsibility for possible illegal performance."

Id. at 581, 185 A.2d at 150. Here, on the other hand, Mr. Phillips is fully accountable to the Attorney General, and through him to the Governor. Moreover, insofar as he acts under the authority of section 907, he is "subject to all the liabilities imposed upon [district attorneys] by law." See note 11, supra.

**17.** The passage relied upon by appellant reads as follows:

"It should be stated here that much of the confusion, complications and complexities in this case did not result from the error of any single judge but was caused by the strange composition of the Court of Common Pleas of Philadelphia County. Instead of one integrated Court with a President Judge over all, the Court is made up of seven separate Courts, each compris-

dent judge consult with the other judges of his court before he requests the intervention of the Attorney General under section 907.[18] Because there was no such consultation here, appellant contends that the request for appointment of a special attorney was defective and the Attorney General was not authorized to act under section 907.

The statute makes no mention of any requirement of consultation, vesting the authority to request intervention solely in the president judge.[19] We can find no basis in law or policy for adding such a requirement to those set forth in the statute. Consequently, appellant's contention that the request was void for want of consultation with the Board of Judges must fail.

> ing three judges with a president judge of its own. Each of these seven courts exercises a certain amount of autonomy which separates it from the other six, as much as if it were in another county.
>
> . . . . . . . .
> "Had there been one President Judge having administrative direction over all judges assignable to the criminal courts of Philadelphia County when the Leonard petition was filed, he would have decided, after consultation, of course, with the whole body of judges, whether he should call upon the Attorney General of the Commonwealth, under [section 907.]
>
> . . .
> "The lack of a single coordinating president judge in the Philadelphia district, however, did not suspend the applicability to Philadelphia of the quoted Act. The duty still devolved on Judge Alessandroni to take up with the other judges of the Court the question as to whether, under the circumstances presented to him, the Attorney General should be requested to supersede the District Attorney. Instead of considering this definitive procedure, Judge Alessandroni acted on his own volition and displaced the District Attorney."
>
> Id. at 565–66, 185 A.2d at 141–42 (emphasis added).

18. Indeed, appellant claims that it is necessary to submit a formal proposal to the Board of Judges of the court in question to request intervention by the Attorney General.

19. "When the president judge, in the district having jurisdiction of any criminal proceedings . . . shall request the Attorney General to do so in writing, setting forth that, *in his judgment*, the case is a proper one for the Commonwealth's intervention, the Attorney General is hereby authorized and empowered . . . ." (emphasis added)
See note 11 supra.

Appellant next urges an argument based on the nature of the powers which a special attorney may exercise. Section 907 provides that a special attorney "shall supersede the district attorney of the county in which the case or cases may arise, and shall investigate, prepare, and bring to trial the case or cases to which he may be assigned." [20] Appellant urges that the requirement that a special attorney be assigned to "a case or cases" precludes an assignment including the entire work of "an investigating grand jury and all indictments flowing therefrom." [21] We can not agree.

The purpose of section 907 is to provide for the enforcement of the law when the district attorney, for any reason, is unable or unwilling to conduct prosecutions. The statute authorizes a special attorney to "investigate" the cases to which he is assigned. Nothing in its language limits the number of cases which may be included in the assignment or requires that an exhaustive list of criminal episodes to be investigated be provided in advance. Under appellant's proposed construction the statutory procedure would be usable only in isolated cases of prosecutorial inability or unwillingness. It would be useless in the far more pernicious situation created by failure to take action against a pervasive system of official corruption such as that which the June 1972 Grand Jury and the Pennsylvania Crime Commission found to exist in Philadelphia. We cannot accept such a construction. See Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(1) (Supp.1975).

Moreover a similar supersession of a district attorney based solely on the common law powers of the Attorney General was approved in *Margiotti Appeal*, 365 Pa. 330, 75 A.2d 465 (1950.) There the Attorney General took control of a grand jury investigation into a widespread

20. See note 11 supra.
21. Brief for Appellant at 31–32.

pattern of acts by employees and elected officials designed to defraud the City of Pittsburgh without any request by the president judge for the Commonwealth's intervention. We can see no reason why the powers of the Attorney General should be more restricted when, pursuant to section 907, the president judge of the judicial district specifically requests that he intervene. See *Commonwealth ex rel. Minerd v. Margiotti*, 325 Pa. 17, 32, 188 A. 524, 530–31 (1936).

■ Appellant's final argument directed to the propriety of the supersession is that it was unnecessary and therefore improper under the facts existing at the time. We have held that where the Attorney General, upon his own motion, supersedes a district attorney, his action is reviewable for abuse of discretion. *Margiotti Appeal*, 365 Pa. 330, 331–33, 337–39, 75 A.2d 465, 466–67, 468–69 (1950); *Dauphin County Grand Jury Investigation Proceedings (No. 3)*, 332 Pa. 358, 364–65, 2 A.2d 809, 812–13 (1938). While it is not clear whether this rule also applies to the action of the Attorney General pursuant to section 907, we need not decide that question because it is clear that there was ample basis for his action in this instance.

The June 1972 Grand Jury, on the basis of its investigation, found pervasive and systematic corruption among public officials and employees in Philadelphia. It recommended the convening of a new grand jury to investigate apparently widespread corruption of police officers and officials responsible for letting public contracts. The January 1974 Grand Jury was charged with this task and the district attorney was requested to furnish the staff necessary to assist it in its investigation. The district attorney repeatedly and publicly refused to furnish the necessary staff. These facts alone suffice to justify intervention by the Attorney General at the request of President Judge Jamieson, for in the absence of such in-

tervention, the Grand Jury's investigation would be frustrated at the outset.

Much of appellant's argument is directed to alleged improprieties in the funding of the Office of the Special Prosecutor by grants from the Law Enforcement Assistance Agency (LEAA), a federal agency. Specifically, he contends that misrepresentations were made in the application for LEAA funding; that no proposal was submitted to the Regional Planning Council; that the grant illegally provided 100% funding for the Office of the Special Prosecutor; and that the Office of the Special Prosecutor has violated certain conditions attached to the grants. These allegations need not concern us, for, as appellant himself concedes, it is not the province of this Court to supervise the proper allocation of federal funds by a federal agency.[22] Appellant's complaints in this regard would be more properly addressed to the LEAA, as the agency primarily concerned, and, perhaps, the federal courts.[23]

Moreover, even assuming that the funding for the Office of the Special Prosecutor has been improperly obtained, it would not follow that the actions taken by that office would be stripped of their validity. While the funding may be necessary to the operation of the Office as a practical matter, it is in no way necessary to its *legal* authority to act.[24]

22. Appellant, raising what he denominates a Tenth Amendment claim, asserts that the federal government cannot authorize a state official to do that which he lacks authority to do under state law. But the federal government does not purport to confer upon the Attorney General the power to supersede the district attorney and appoint a special attorney. As we have already indicated, the Attorney General's action was authorized by state law. The United States surely may, if it wishes to do so, provide funds to facilitate his exercise of the powers conferred by state law.

23. We note that appellant is, in fact, urging these contentions in an action now pending in the federal courts. *Hallman v. Phillips*, Civil Action No. 75–30 (E.D.Pa.1975).

24. Thus *Pipa v. Kemberling*, 326 Pa. 498, 192 A. 878 (1937), relied upon by appellant is entirely inapposite. In that case, the Attor-

286

Finally, appellant seeks to show that the establishment and continuation of the Office of the Special Prosecutor have been specifically disapproved by the General Assembly. In support of this contention, he relies upon the failure of the General Assembly to enact a bill[25] which would have established such an office on a permanent basis and the deletion from the state budget of any appropriation for the support of the Office of the Special Prosecutor. This contention is entirely without merit.

The mere failure of the General Assembly to adopt a particular bill is entirely without significance. First, such failure implies nothing about the will of the General Assembly for it may result from any number of causes—attention to other, more pressing business; disagreement over particular details of the proposal; or simple inertia. Second, and more importantly, when the Attorney General is empowered by existing law to take a particular action, his authority, can only be revoked by new legislation, requiring affirmative action by both

ney General had appointed a special attorney and specified that his compensation would be paid by the county. When the special attorney attempted to collect from the county, it denied liability and refused to pay. The special attorney sought mandamus which was denied on the ground that the Attorney General had no power to require the county to pay the compensation of a special attorney appointed pursuant to section 907.

Contrary to appellant's interpretation of *Pipa*, that case does not *require* that a special attorney be paid by the Commonwealth, but only precludes requiring a county to pay his compensation. A county may nevertheless pay the compensation of a special attorney if it wishes to do so. *Commonwealth ex rel. Attorney General v. Irvin*, 110 Pa.Super. 387, 168 A. 868 (1933). Moreover, nothing in the record indicates that Mr. Phillips is being paid by anyone other than the Commonwealth, though the funds which it uses to pay him are derived from a federal grant. Finally, nothing in *Pipa* even faintly suggests that a special attorney would be deprived of power to perform the duties assigned to him pursuant to section 907 even if his compensation were paid from improperly obtained public funds.

25. House Bill 1975, introduced in the 1974 session of the General Assembly would have established an independent special prosecutor, appointed for a term of six years. That arrangement would, of course, be much different from that involved in the case before us.

houses of the General Assembly and either the approval of the Governor or repassage over his veto as prescribed in article IV, section 15 of the Pennsylvania Constitution. Failure to enact a bill may result from simple inaction by a single house of the General Assembly and is therefore totally ineffective to withdraw powers conferred by existing law.

Similarly, failure to provide appropriations to support a particular activity does not withdraw authority to engage in that activity if it may validly be pursued in the absence of a specific appropriation. For example, if the action involves no expenditures, if the necessary funds are supplied from sources other than the state treasury, or if public officers may properly use funds whose specific allocation is entrusted to their discretion, no specific appropriation is necessary. To allow an impairment of the powers of a public officer by such a device would permit the General Assembly to circumvent the constitutional requirement of gubernatorial approval of all legislation except that passed over his veto. Moreover, as we have previously observed, even if the public funds supporting his activities were improperly obtained, the power of a special attorney to prosecute would be affected.

Inasmuch as appellant has presented no valid objection to the appointment of Phillips as special attorney or to his authority to conduct prosecutions arising out of the investigation of the January 1974 Grand Jury, the order of the Commonwealth Court granting summary judgment for the defendants must be affirmed.

Order affirmed.[26]

EAGEN, J., took no part in the consideration or decision of this case.

NIX and MANDERINO, JJ., dissent.

**26.** See note 3, supra.