# Carbon County Judicial Vacancy.

*Courts—Judicial vacancy—Death of judge—Power of Supreme Court to make temporary appointment—Acts of May 22, 1722, 1 Sm. L. 140, and April 27, 1925, P. L. 328.*

1. Although the present Constitution of Pennsylvania prevents the judges of the Supreme Court from holding a separate nisi prius court, and thus exercising the original jurisdiction pertaining thereto, the Constitution has not taken away from the Supreme Court the broad authority over courts of original jurisdiction previously vested in that court by the Act of May 22, 1722, 1 Sm. L. 140.

2. When all the judges of a court subject to the supervisory jurisdiction of the Supreme Court are disqualified to act in particular litigation by death or otherwise, the Supreme Court has power to designate a judge from another district to preside, until a president judge for the district shall be duly commissioned.

3. Where a judge in a judicial district having only one judge appoints, before his death, two other judges, one to hold a criminal court, and the other to hold a civil court at the next term, these assignments will, on the death of the resident judge, hold good, but the Supreme Court will appoint another judge to perform the judicial duties of the district before and after the ex-

piration of the time filled by the appointees of the deceased judge, and such appointment will hold good until a president judge for the district shall be duly commissioned.

4. The Act of April 27, 1925, P. L. 328, relating to vacancies in the orphans' court, does not deprive the Supreme Court of its plenary powers of appointment in case of vacancies.

In the Matter of the Judicial Vacancy in Carbon County, No. 46, Miscellaneous Docket No. 5.

PER CURIAM, March 2, 1928:

The attention of this court has been called, by the clerk of the Court of Common Pleas of the 56th Judicial District (Carbon County), to the death of HON. LAIRD H. BARBER, lately its President Judge. We have also been notified of this regrettable fact by the HON. CLAUDE T. RENO, President Judge of the 31st Judicial District (Lehigh County), who, under the Act of February 26, 1903, P. L. 7, because of the geographical location of his courthouse, is expressly vested with authority, under circumstances such as those now before us, "to issue writs, grant preliminary applications, motions, rules to show cause,......approve securities, and make all interlocutory orders and decrees" until a successor shall be duly qualified to take the place made vacant by the death of Judge BARBER.

Judge RENO states that he holds himself "ready to perform any duty included, in the Act" of 1903, but that this statute does not authorize him to "try cases or enter any final decree, judgment or order"; on the contrary, by expressly omitting such authority from the powers enumerated, it in effect forbids him so to do. He states also that there are matters pending in the courts of Carbon County which should be heard and decided before the next regular term in that district, which commences on the first Monday of April, 1928; that President Judge BARBER had, under the Act of April 27, 1911, P. L. 101, called "Judge CULVER, of Bradford County, to hold the April criminal court, and Judge TERRY, of Wyo-

ming, for the civil court." Judge RENO adds that he deems it his duty to notify the Supreme Court of the condition of affairs to which he calls attention, so that, if it has authority in the premises, the situation may be relieved by the Chief Justice designating a "judge competent for all purposes" to sit forthwith in the courts of Carbon County and to act as long as the situation might demand his services.

In our opinion, Judges CULVER and TERRY having been duly assigned to Carbon County before the death of Judge BARBER, the first of them to commence service on April 9, 1928, and the other on April 23, 1928, these assignments still hold good.

On the point of our authority to designate a judge to serve in place of the late President Judge BARBER until the two judges above mentioned commence their terms of service in his court and after they shall have completed such service, the present Constitution of Pennsylvania prevents the judges of the Supreme Court from holding a separate nisi prius court, and thus exercising the original jurisdiction pertaining thereto, as they could do prior to 1874, but it has not taken away the broad authority over courts of original jurisdiction previously vested in them by the 13th section of the Provincial Act of May 22, 1722, 1 Sm. L. 140 (Chase v. Miller, 41 Pa. 403, 411; Com. v. Balph, 111 Pa. 365, 380, 381; Hoopes v. Bradshaw, 231 Pa. 485, 489; Hanover Twp. School Directors, 290 Pa. 95, 105), and when all the judges of a court subject to our supervisory jurisdiction are disqualified to act in particular litigation, we have the power to designate a judge from another district to preside (Summers v. Kramer, 271 Pa. 189, 199), which is likewise the case where the bench of a district is entirely vacant because of death, as in the present instance, or for any other reason; our power to relieve such a situation extends to all the business of a court so conditioned, as well as to any particular case.

As may be seen by the above mentioned authorities, and others that could be cited, the plenary powers to which we refer are conferred upon this court by the Act of 1722, supra, which, in express terms, gives us the right to "generally......minister justice......and exercise the jurisdiction and powers......[for] all...... purposes whatsoever [exercised by] the Justices of the Court of King's Bench, Common Pleas and Exchequer, at Westminster, or any of them." It cannot be doubted that, if, in 1722, the occasion required such a course, the judges of the King's Bench of England either could have presided over any other court of lower degree, or, if they deemed it necessary so to do, could have sent another judge of proper rank to sit in such court. The last mentioned power is the one here invoked, and we have no doubt of our right to exercise it. The authority of a tribunal in the relative position of the Supreme Court of Pennsylvania over other tribunals of less degree can be taken away only by express words or irresistible implication (Burginhofen v. Martin, 3 Y. *479; Overseers v. Smith, 2 S. & R. 362, 365), and we have not been thus deprived of any of the general powers granted to this court by the 13th section of the Act of 1722.

The Act of April 27, 1925, P. L. 328, provides that, "Whenever the bench of the orphans' court in and for any county shall be entirely vacant," the clerk of that court shall notify the chief justice of the Supreme Court, and the latter shall designate a law judge to act until a new judge is duly commissioned. It would have been better if the legislature had included in this act courts of common pleas and other courts of original jurisdiction, but the probabilities are that some special situation in the orphans' court was in the mind of the draftsman of the act, and that this caused the omission of other courts. However that may be, there is nothing in the Act of 1925 which deprives the Supreme Court of its plenary powers in the premises; the statute in question simply regulates the exercise of such powers in

cases of vacancies covered by its provisions. The present situation calls for relief under our general authority, and the following order is therefore made:

With the exception of the time that the bench of Carbon County is filled by President Judges CULVER and TERRY under their assignments, the HON. CLAUDE T. RENO, President Judge of the 31st Judicial District, is hereby designated to sit in the courts of that county and to perform all the duties appertaining to the office of the president judge of that district, including the power to take advantage of the provisions of the Act of 1911, supra, for the purpose of keeping the bench of the county in question properly filled until a president judge for the district shall be duly commissioned to act.