### In the Matter of the MUNICIPAL COURT OF the CITY OF CEDAR RAPIDS, Iowa, and the Judges Thereof.

#### No. 54989.

Supreme Court of Iowa.

June 17, 1971.

PER CURIAM:

On February 11, 1971, following the receipt by the Chief Justice of the Supreme Court of Iowa of a complaint that the trial and disposition of traffic cases in the Municipal Court of Cedar Rapids, Iowa, was being unduly delayed, and of other alleged deficiencies, principally characterized as misfeasance or nonfeasance on the part of the judges of the Municipal Court an order was entered by the Chief Justice directing Mr. Clarence A. Kading, the duly appointed statistician of the Judicial Department, to personally conduct an investigation of the administration of the Municipal Court of the City of Cedar Rapids, and the conduct of the personnel of that court. In his order, the Chief Justice directed the statistician to include in his investigation and report the number of cases filed during the last two prior years, both civil and criminal, the cases tried during that period, and cases tried but undecided, and further to investigate whether any undue delay in the trial of cases involving the charge of operating a motor vehicle while under the influence of alcoholic beverages was disclosed by the records of the court. The statistician was directed to conduct such inquiry and make available to the court at the earliest reasonable moment a full report of his findings.

Such an investigation was conducted by the statistician of the Judicial Department of the State of Iowa, commencing on February 16, and terminating on March 21, 1971, and a full, complete and comprehensive report of his findings and conclusions was thereafter filed. It appears that the matters principally inquired into were: (1) whether the Cedar Rapids Municipal Court was adequately discharging its duties in disposing of matters before it, and (2) if the court was not adequately disposing of matters before it, the reasons for the failure to do so.

It was the conclusion of the statistician that the Cedar Rapids Municipal Court was not adequately handling the work before it, with the exception of juvenile matters.

He further concluded that the work habits and personality traits of two of the judges of the court were for the most part the causative factors for the failure on the part of the Cedar Rapids Municipal Court to adequately handle its responsibilities.

The Municipal Court of Cedar Rapids, Iowa, is staffed by three judges, who are elected by popular vote of the electorate of the city. The three incumbent judges presently are: the Honorable Loren M. Hullinger, Jr., the Honorable John B. Reilly, and the Honorable August F. Honsell, Jr. The court is divided for administrative purposes into civil, criminal and juvenile divisions. The three judges rotate in the handling of criminal cases on a monthly basis, and Judges Hullinger and Reilly rotate the handling of civil cases, except juvenile cases, also on a monthly basis. Civil cases are only occasionally handled by Judge Honsell, as Judge Honsell is the delegate of the District Court for the handling of juvenile cases under the provisions of sections 231.2 and 231.3, Code of Iowa, 1971. Judge Honsell, therefore, handles all juvenile cases, devoting most of his afternoons and fifty percent of his time to the juvenile work, and in the absence of Judge Honsell, the juvenile matters are handled by Judge Reilly. It is obvious one of the principal reasons for the difficulties in which the court now finds itself, is that there has been a virtual absence of cooperation or coordination among the three judges of the court.

The Municipal Court has adopted rules of procedure, rule 17 of which requires that all files in civil cases and all informations in criminal and traffic cases be kept at all times in the clerk's office, except during trials, hearings or arraignments. Judges under the rule are permitted to retain files in their chambers for a reasonable time until rulings and entries or findings may be made, and the clerk is made responsible for all files and shall not permit attorneys to remove the same from his office except on order of a judge of the court endorsed on a calendar sheet. It appears that Judge Hullinger has generally observed the rule, but has violated it with respect to certain cases, that Judge Reilly virtually ignores it, but that Judge Honsell has observed the rule strictly with regard to retention of files.

Two assistant county attorneys are assigned to the handling of criminal cases in the Municipal Court, and a third is detailed occasionally to assist in the handling of juvenile cases. All report difficulty in locating judges to hear State cases. One assistant city attorney has the responsibility for handling ordinance cases before the court, and he likewise reports he encounters difficulty in getting Judge Reilly to dispose of cases, and in finding a judge when he is in need of orders. The county attorney some time ago was requested by the judges of the district court to file indictable misdemeanor cases and applications for search warrants in the Municipal Court, but because of delays he has encountered in disposing of such matters in the Municipal Court, he has now requested the District Court to resume the handling of such indictable misdemeanors and search warrant matters. The Municipal Court judges in their contact with the judicial statistician deny that this step is necessary.

The Municipal Court of Cedar Rapids is the subject of much criticism from the local Bar and from the public; local attorneys refuse to employ the civil side of the court, principally because of the delays encountered in the disposition of cases, and as a consequence of their reluctance or refusal to use the civil facilities of the court, 1061 cases involving sums under $2,000 were filed in the office of the clerk of the Linn County District Court in the years 1969 and 1970.

The large backload of pending cases in the court is increasing. Pending cases have not accumulated inordinately other than those cases which are undisposed of and under the control of Judges Hullinger and Reilly, and awaiting further action on their part due to the fact the clerk has made regular use of the facilities of R.C.P. 215.1. At the time of the investigation of the

court, there were pending 1487 criminal cases, 1537 ordinance cases, and 838 civil cases, and the statistician's report indicates the record is accurate only from the month of November, 1969.

One of the principal areas inquired into by the statistician was the matter of claimed delay in the handling of criminal cases in which the defendants were charged with the crime of operating a motor vehicle while intoxicated. Investigator's report clearly indicates there have been delays in the disposition of such cases, and so far as the record indicates there would appear to be no sufficient justification for such delays. Since the conduct of inquiry by Mr. Kading, we are informed the accumulation of O.M.V.I. cases has received or is receiving better attention.

The investigator inquired into several other areas, all of which are of course significant, but reference to the same would unduly extend this opinion. The other areas of inquiry included an investigation into the claimed refusal of Judge Reilly to permit full and complete reporting of hearings in his court; a review of the files in a case of one individual in which two charges of operating a motor vehicle while under suspension were pending, and not disposed of; the disposition of some 2000 traffic summons in the pending file at the Police Department, many of which have unquestionably been disposed of by the court but advice of this disposition has not reached the Police Department; and other general investigative inquiry.

I. Judge Loren Hullinger, Jr., has been a judge of the Municipal Court since March 7, 1957. He was an incumbent at the time the Municipal Court of Cedar Rapids was investigated in 1964, and was censured by the Supreme Court In the Matter of the Judges of the Municipal Court of Cedar Rapids, Iowa, 256 Iowa 1135, 130 N.W.2d 553. The impression gleaned by the statistician in making his investigation, is that he is considered to be a good judge, has an adequate legal mind, and willing to make decisions. Impression further is that he obeys the administrative rules established by the court generally. However, after he had initially stated to the statistician that he had no cases in his possession undisposed of in his office or elsewhere, 17 cases were located in a wire basket in a cabinet in Judge Hullinger's office. He denied any knowledge of such cases, some of which were taken to him in 1964. All remained undisposed of until February 24, 1971, after the investigation had begun and the cases had been discovered by the statistician, at which time hurried and inappropriate entries were made by Judge Hullinger in some of the cases.

Judge Hullinger customarily puts in a work week of approximately 24 hours except where he is occupied in his regular turn in the criminal division. In view of the ever increasing caseload this schedule is totally insufficient to permit Judge Hullinger to carry his proportionate share of the work of the court.

The investigation also disclosed that Judge Hullinger drinks excessively, on some occasions, appearing in his office and in court showing outward manifestations of being either intoxicated or recovering from overindulgence of liquor.

II. Judge John B. Reilly was appointed to the Municipal Bench in September, 1967. He customarily takes Wednesday afternoons off, and takes irregular vacations. He customarily works a full day and frequently holds court in the Detective Bureau at the Police Station on Saturday and Sunday mornings for the purpose of fixing bail or releasing persons arrested. The latter practice has been criticized by some of the police, and the procedure is doubtless in part at least responsible for the loss or misplacing of informations and the failure to docket cases. Judge Reilly, in all likelihood, carries the heaviest work load among the three judges, and is the most readily available to prosecutors and other attorneys when the services of a judge are required. On submission of legal matters

to him for decision, however, whether it be in the trial of a case to the court, or a hearing on a motion, he takes nearly all matters under advisement and does not rule within a reasonable time. A significant number of the cases taken under advisement by Judge Reilly are never ruled upon.

At the time the investigation was being conducted, Judge Reilly was absent on vacation, and the statistician found it necessary to have the Clerk collect the cases, files, and informations in Judge Reilly's office. An analysis of the records located in Judge Reilly's office revealed several hundred cases, or other legal matters requiring attention, the vast majority of which were criminal matters, about one-half involving ordinance violations. Of the civil matters located in Judge Reilly's office a number had been tried but remained undecided, some had been set for trial with no showing trial was had, some had trial notes in the files and others disclosed no rulings or entries made. Some files disclosed requests for rulings on motions with no ruling or entry made.

III. Judge August F. Honsell, Jr., the newest of the three judges, was appointed on April 27, 1970, and had been serving something less than a year at the time of the investigation. At the time of his appointment, he was designated by the entire bench of the Linn County District Court as that court's delegate to handle juvenile cases in Linn County. He customarily puts in a full work week of 5 full days, had no cases pending and undisposed of, and keeps no court files or informations in his office. When he takes his turn in the criminal division of the court, he customarily rules promptly unless extraordinary circumstances exist.

We consider the answer to much of the problem of pending cases to be the need to institute and enforce a rule requiring each judge to show by calendar entry when an undisposed of case shall again come to the attention of the court. Such a rule should require the clerk to present each such case to a judge on the date which the last calendar entry provides.

IV. Investigation was made into the complaint that certain attorneys, members of the Linn County Bar and engaged in the practice of law in Cedar Rapids, had been favored in the matter of appointments for indigent criminal defendants. While it appeared to the investigator that certain attorneys had been appointed repeatedly, no set or significant pattern appeared which would indicate that any of the judges had been inclined toward inordinate favoritism toward any attorney. While it was impossible for the investigator to establish how many of the appointments for indigent defendants made by the three judges resulted from requests made directly by the defendants themselves, it is not beyond the realm of possibility that appointments were so made in the majority of the cases. The claim of favoritism directed principally toward Judge Hullinger resulted obviously from the fact that Judge Hullinger was known to have frequented certain drinking establishments in Cedar Rapids in the company of some of the attorneys appointed by him for the representation of indigent criminals. The subject of fees paid to court-appointed attorneys which has received wide publicity in the press is said to be engendering ugly rumors of favoritism and even of kickbacks. The investigator's report does not contain any information which would tend to establish that any appointment in the years investigated was improper.

V. The caseload of the Municipal Court of Cedar Rapids is undoubtedly a heavy one. During 1969 and 1970 there were filed 729 preliminary informations, 191 indictments and true informations, 5849 nonindictable state cases, and 24,517 ordinance cases, separately docketed. Parking violation charges docketed collectively totaled 219,342. During the same period 3290 civil cases were filed in the Municipal Court.

The record seems to indicate that the Cedar Rapids Municipal Court was in rela-

tively current and good condition regarding pending cases after its censure by the Supreme Court of Iowa in 1964. From 1965 to recent date there is evidence of a steady progression of the number of undisposed of cases. The court is unquestionably behind in its work at the present time, and the situation is worsening. This statement could in all probability be made about many courts in Iowa, in which all judges are making every reasonable effort to keep up with the caseload. A dramatic increase in caseload is a fact of life in almost every court, and it certainly is a factor in the situation with which we are involved here.

VI. It appears, however, that contributing reasons for the excess of undisposed of cases in the Cedar Rapids Municipal Court are the habits and personalities of Judges Hullinger and Reilly. Judge Hullinger's drinking habits, his shortened work week and frequent absences, and his physical condition while on duty are major reasons why the court has been unable to keep up. His inability or unwillingness to assume his fair share of the load has cast a heavy burden on the other two judges, particularly upon Judge Reilly in view of Judge Honsell's heavy involvement in juvenile work. This results in an unfortunate combination of circumstances, for while Judge Reilly appears to be energetic and is readily available, he defers deciding cases or fails completely to decide them, and seems unwilling to accept the harsh realities of judicial responsibility.

■ VII. While it is true that Article V, section 4, of the Constitution of Iowa, provides the "Supreme Court shall * * * exercise a supervisory and administrative control over all inferior Judicial tribunals throughout the State", this supervisory and administrative control has limitations. We have no power to suspend or remove any judge of any inferior judicial tribunal. The power to remove a judge of a municipal court is either in the hands of the electorate at the polls, or must be accomplished by resort to the removal facilities provided for by statute. Chapter 66, Code of Iowa, 1971, provides any appointive or elective officer, except such as may be removed only by impeachment, holding any public office in the state, may be removed from office by the District Court for willful or habitual neglect or refusal to perform the duties of his office, for willful misconduct or maladministration, or for intoxication. The process for removal may be instituted by the Attorney General in any case, or by five qualified electors of the municipality where the duties of the office are to be performed.

A constitutional amendment has now been passed by both houses of the legislature at two successive sessions to be presented to the people of this state at the next general election. This amendment, if adopted, will afford additional disciplinary powers to a proper agency, but it is not yet the law of the state.

However, in the exercise of our supervisory function, we do now:

1. Hereby censure Judge Loren M. Hullinger, Jr., for his conduct which has reflected on the court and the entire judicial system, and admonish him to assume his fair share of the judicial work load in the Municipal Court of the City of Cedar Rapids by devoting proper time to the work of his office, and to attend to the work of his office with sobriety and industry.

2. Censure Judge John B. Reilly for his failure to properly perform his responsibilities as a judge and admonish him to face up to the responsibilities of his office, and to make prompt disposition of cases pending before him, and to come before him in the future.

3. Remind all of the judges of the Municipal Court of Cedar Rapids of the necessity for cooperation, coordination and constant communication among and between themselves on all matters pertaining to the administration of the court.

4. Direct that administrative procedures be developed by the court in cooperation

with the clerk and staff thereof, to provide a readily available record of pending cases of all types, and the status thereof.

VIII. It is ordered and directed that, each of the Judges of the Municipal Court of Cedar Rapids, namely, Judge Loren M. Hullinger, Jr., Judge John B. Reilly and Judge August F. Honsell, Jr., until further order of this court, shall:

A. Place his initials and the date upon each information and case file in which the case relating thereto is initially submitted to him for any action or disposition.

B. Initial and set forth on each information, case file or a paper contained therein a brief notation of every judicial action or disposition taken with respect to the case, and the date thereof.

C. Promptly submit to this court for the quarter ending June 30, 1971 and quarterly thereafter a signed special report containing the following information:

1. The number of cases disposed of by the reporting judge in the prior quarter specifying

(a) number of criminal jury cases tried

(b) number of civil jury cases tried

(c) number of criminal cases disposed of without a jury

(1) by dismissal

(2) by guilty plea

(3) by trial to the court

(d) number of civil cases disposed of without a jury.

2. The number of cases the reporting judge has heard but has not finally disposed of specifying

(a) the name of each case

(b) the filing date of each case

(c) the date of hearing with respect to each such case.

3. The following information with respect to each case file, information or traffic summons under the custody or control of the reporting judge and not in the clerk's office:

(a) name of the case

(b) filing date

(c) exact physical location of each such case file, information or traffic summons.

IX. This opinion has been developed after careful investigation and report by the statistician of this court, conferences with two justices of this court and the judges involved, a conference between the full membership of the Supreme Court and all of the judges of the Cedar Rapids Municipal Court. Opportunity was afforded any of the judges to demand a public hearing if desired, which they waived.

We have been assured by all of the judges of the Cedar Rapids Municipal Court that they are developing new and different administrative practices and are seeking close rapport, each with the others to create and maintain communications in the interest of handling the work of the court with dispatch and propriety.

The independence of all the courts in the exercise of judicial functions must be carefully protected and respected. Nothing herein relating to administration of the Cedar Rapids Municipal Court is intended to dictate to the judges how judicial issues in individual cases shall be decided.

It is so ordered.