Commonwealth of Pennsylvania ex rel. District Attorney Arlen Specter, Plaintiff, *v.* Ralph M. Dennis, Municipal Court Judge, and Edward S. Cox, Municipal Court Judge, Defendants.

Argued June 6, 1973, before President Judge Bow-
man and Judges Crumlish, Jr., Kramer, Wilkinson,
Jr., Mencer, Rogers and Blatt.

*Steven H. Goldblatt,* Assistant District Attorney, with him *Robert B. Lawler,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for plaintiff.

*Howard Gittis,* with him *Alan J. Davis* and, of counsel, *Wolf, Block, Schorr and Solis-Cohen,* for defendant, *Dennis.*

*Isaiah W. Crippins,* for defendant, Cox.

OPINION BY PRESIDENT JUDGE BOWMAN, August 2, 1973:

This is an action in mandamus brought in this Court against two judges of the Municipal Court of Philadelphia.

On February 9, 1973, the District Attorney of Philadelphia filed a complaint in mandamus requesting this Court to order the Honorable RALPH M. DENNIS and the Honorable EDWARD S. COX, Judges of the Municipal Court of Philadelphia, to "carry out their required duties as public officers and, more specifically, to remain on duty for their entire assignment when scheduled to preside at preliminary arraignments." The District Attorney sought this relief in order to efficiently implement his program of a 24 hour-a-day arraignment court. The complaint alleges that the refusal of these two judges to work the entire eight hours of some of their assigned shifts and their failure to appear at all for other assignments have prevented the functioning

of the "round-the-clock arraignment court." To this complaint, Judge DENNIS filed preliminary objections asserting that the Commonwealth Court lacks jurisdiction, this Court is not the proper venue for mandamus, the District Attorney lacks standing to sue, and the complaint does not state a cause of action upon which relief may be granted. Raising identical issues, Judge Cox filed an answer to the complaint and later moved for judgment on the pleadings.

For a number of reasons we must sustain the preliminary objections and dismiss the complaint.

Initially, we hold that the complaint fails to state a cause of action upon which relief may be granted. "Mandamus lies to compel the performance of a ministerial as opposed to a discretionary duty. 'The primary requisites of the action are that the plaintiff has a legal right to enforce which is specific, well defined and complete; that a corresponding positive duty rests upon the defendant; and that no other adequate, specific or appropriate remedy exists.' : Francis v. Corleto, 204 Pa. Superior Ct. 280, 283, 203 A. 2d 520 (1964) ; Garratt v. Philadelphia, 387 Pa. 442, 448, 127 A. 2d 738 (1956)." *Commonwealth ex rel. Specter v. Martin,* 426 Pa. 102, 107-108, 232 A. 2d 729, 733 (1967). Subsequent judicial decisions have emphasized that the plaintiff must have a *clear* legal right. *Garchinsky v. Clifton Heights Borough,* 437 Pa. 312, 263 A. 2d 467 (1970). The District Attorney concedes that the eight-hour shift availability is not required by the Rules of Criminal Procedure. Nor is the alleged duty sought to be enforced found in any statute or other rule of court. Instead, the District Attorney contends that the "clear legal right" is the right of accused persons under the Pennsylvania Rules of Criminal Procedure to have a prompt arraignment and a prompt bail hearing and the "ministerial duty" is the judge's physical presence dur-

ing the assigned eight-hour shift. We cannot subscribe to this interpretation and application of the necessary prerequisites of a proper mandamus action. Absent statutory or regulatory authority, there is neither a clear legal right in the plaintiff nor a ministerial duty resting upon the defendants with regard to the 24-hour arraignment court.

Mandamus will not lie for an additional reason: by way of either the Supreme Court's inherent power to discipline judges or the Judicial Inquiry and Review Board created by Article V, Section 18(d), of the 1968 Constitution of Pennsylvania, there exists an adequate, specific or appropriate remedy.

The 1968 Constitution of Pennsylvania expressly provides for a "unified judicial system." Article V, Section 1, declares: "The judicial power of the Commonwealth shall be vested in a unified judicial system consisting of the Supreme Court, the Superior Court, the Commonwealth Court, courts of common pleas, community courts, municipal and traffic courts in the City of Philadelphia, such other courts as may be provided by law and justices of the peace. All courts and justices of the peace and their jurisdiction shall be in this unified judicial system." In order to achieve this objective, it was necessary that the people repose in the Supreme Court certain responsibilities. Thus, Article V, Section 10, states: "(a) The Supreme Court shall exercise general supervisory and administrative authority over all the courts and justices of the peace, including authority to temporarily assign judges and justices of the peace from one court or district to another as it deems appropriate." The Supreme Court's inherent power of superintendency over inferior tribunals has been traced historically. Regarding the power to issue writs of prohibition, the Court said in *Carpentertown Coal & Coke Co. v. Laird*, 360 Pa. 94, 99-100, 61 A. 2d

426, 428-29 (1948), "[T]he justification for the Court's exercise of such power is to be found in the Act of May 22, 1722, 1 Sm. L. 131, 140, section XIII, which vested in the Supreme Court all the jurisdictions and powers of the three superior courts at Westminster, namely, the King's Bench, the Common Pleas and the Exchequer. Inherent in the Court of King's Bench was the power of general superintendency over inferior tribunals, a power which was of ancient inception and recognized by the common law from its very beginnings . . . . By the Act of 1722 the Supreme Court of Pennsylvania was placed in the same relation to all inferior jurisdictions that the King's Bench in England occupied, and thus the power of superintendency over inferior tribunals became vested in this Court from the time of its creation . . . . The power of controlling the action of inferior courts is so general and comprehensive that it has never been limited by prescribed forms of procedure or by the particular nature of the writs employed for its exercise." It can be persuasively contended that this power of superintendency includes not only power over the tribunal, but also over the members thereof.[1] To date, however, we have found no case in which the Supreme Court of Pennsylvania has disciplined a member of the judiciary based on this inherent power, although high courts of other states have. *Accord, Mahoning County Bar Association v. Franko,* 168 Ohio St. 17, 151 N.E. 2d 17 (1958). *Cf. In re Judges of Cedar Rapids Municipal Court,* 256 Iowa 1135, 130 N.W. 2d 553 (1964).

*In re DeSaulnier,* 1971 Mass. Adv. Sh. 1345, 274 N.E. 2d 454 (1971), a decision of the Supreme Judicial

---

[1] The inherent power of the Supreme Court to discipline lower court judges is considered in "The Judiciary," Reference Manual No. 5, The Pennsylvania Constitutional Convention (1967-68).

Court of Massachusetts, is both apposite and instructive. The court held that it had "jurisdiction to impose appropriate discipline upon a member of the bar, who is also a judge, for misconduct or acts of impropriety, whether such acts involve his judicial conduct or other conduct. This, we hold, even though, because he is a judge, he is not permitted to engage in the practice of law." 274 N.E. 2d at 456. The court based its power, authority and jurisdiction to inquire into the conduct of two associate Superior Court justices and to hold hearings to determine the truth or falsity of the allegations on several grounds: "(a) the inherent common law and constitutional powers of this court, as the highest constitutional court of the Commonwealth, to protect and preserve the integrity of the judicial system and to supervise the administration of justice; (b) the supervisory powers confirmed to this court by G. L. c. 211, §3 [*infra*], as amended; (c) the power of this court to maintain and impose discipline with respect to the conduct of all members of the bar, either as lawyers engaged in practice or as judicial officers; and (d) the power of this court to establish and enforce rules of court for the orderly conduct (1) of officers and judges of the courts and (2) of judicial business and administration." 274 N.E. 2d at 456. The Massachusetts court adopted this position in light of (1) a broad constitutional standard essentially basing tenure upon "good behavior," M.G.L.A. Const. pt. 2, c. 3, art. I; and (2) a legislative grant of authority conferring upon the court "general superintendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein if no other remedy is expressly provided . . ." and upon the justices of the court, "general superintendence of the administration of all courts of inferior jurisdiction . . . ." M.G.L.A. c. 211, §3.

446

Apart from the possibility of disciplining judges pursuant to the Supreme Court's inherent power, it seems clear that the 1968 Constitution of Pennsylvania provides the extant, adequate and appropriate remedy for the case before us in Article V, Section 18, establishing the Judicial Inquiry and Review Board, and providing in subsection (d) that "[u]nder the procedure prescribed herein, any justice or judge may be suspended, removed from office or otherwise disciplined for violation of section seventeen of this article ['Prohibited Activities'], misconduct in office, *neglect of duty, failure to perform his duties,* or *conduct which prejudices the proper administration of justice* or brings the judicial office into disrepute and may be retired for disability seriously interfering with the performance of his duties." [Emphasis added.] We believe that the allegations raised by the District Attorney herein are properly the domain of the Judicial Inquiry and Review Board. In the short time that it has been operating, the Board has pursued and effected not only punitive, but also remedial measures.[2] Thus, the sought for relief could be achieved via the Board. It should be emphasized that the Board is authorized only to make recommendations; pursuant to Article V, Section 18(h), the power to suspend, remove, discipline and the like, is vested in the Supreme Court.

Although we may sympathize with the District Attorney's objectives, we can find no legal basis upon which to support his complaint in mandamus. However, we believe that appropriate utilization of the Judicial Inquiry and Review Board will aid in the realization of a unified judicial system with well-disciplined

---

[2] This latter function of the Board is described in "Reviewing the Review Board" 42 Pa. B. Ass'n Q. 33 (1970). *See also Commonwealth ex rel. Sennett v. Borough of Strasburg,* 90 Dauph. 7 (1968).

and conscientious officers safeguarding the procedural and substantive rights of all litigants.

Alternatively, the District Attorney's action is hindered by the Supreme Court's recent decision in *Collins v. Gessler,* No. 264 January Term, 1973 (Filed July 2, 1973), in which the Court held that the Supreme Court, and *not* the Commonwealth Court, had original jurisdiction in an action in quo warranto filed by a district justice of the peace seeking a declaration that he was serving with lawful authority. The Court based its decision on Section 201 of the Appellate Court Jurisdiction Act, Act of July 31, 1970, P. L. 673, 17 P.S. §211.201 (Supp. 1973-74), which states, *inter alia*:

"The Supreme Court shall have original *but not exclusive* jurisdiction of:

. . . .

"(2) All cases of mandamus or prohibition to courts of inferior jurisdiction;

"(3) All cases of quo warranto as to any officer of statewide jurisdiction." (Emphasis added.)

The Court held that Section 201(3) controls against the applicability of Section 401 of the Act, 17 P.S. §211.401, which reads, *inter alia*:

"(a) The Commonwealth Court shall have original jurisdiction of:

"(1) All civil actions or proceedings against the Commonwealth or any officer thereof, acting in his official capacity . . . .

. . . .

"(b) The jurisdiction of the Commonwealth Court under this section shall be *exclusive* except as provided in section 201 of this act and except with respect to actions or proceedings by the Commonwealth or any officer thereof, acting in his official capacity, where the jurisdiction of the court shall be concurrent with the several courts of common pleas." (Emphasis added.)

*Collins v. Gessler, supra,* implies that the Supreme Court's jurisdiction in such quo warranto matters is not only *original,* but also *exclusive,* despite contrary language in both Sections 201 and 401, 17 P.S. §§211.201, 211.401, which was not discussed. Deferring to this decision, however, we must anticipate that this view of appellate jurisdiction would necessarily apply to subsection (2) of Section 201, as well as to subsection (3), thereby precluding our jurisdiction in the case at bar.

The above discussion renders consideration of the issues of venue and standing to sue unnecessary.

Accordingly, we enter the following

### ORDER

Now, August 2, 1973, the preliminary objections to the complaint in mandamus are sustained and the complaint is dismissed.