369 A.2d 1190
**In re Charles J. FRANCISCUS, Justice of the
Peace, Magisterial District 05–2–44,
Allegheny County.**

Supreme Court of Pennsylvania.

Argued Sept. 20, 1976.

Decided Feb. 28, 1977.

54

H. David Rothman, Harold Gondelman, Pittsburgh, for petitioner.

John J. Kennedy, Jr., Asst. Atty. Gen., Richard E. McDevitt, Executive Director, JIRB, Philadelphia, for respondent.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, and MANDERINO, JJ.

## OPINION

JONES, Chief Justice.

This matter is before this Court on application by petitioner, Charles J. Franciscus, Justice of the Peace for Magisterial District 05–2–44, Allegheny County, to vacate an order of this Court entered on July 28, 1976, suspending him from his office and prohibiting him from exercising any and all judicial functions or duties until further order of this Court. Additionally, the order, which petitioner seeks to vacate, referred petitioner's case to the Judicial Inquiry and Review Board.[1] The order of suspension followed petitioner's indictment in the United States District Court for the Western District of Pennsylvania, relating to his official duties as a justice of the peace.

The question raised by the immediate application is whether this Court possessed the authority to issue the order prior to receiving a recommendation for suspension by the Judicial Inquiry and Review Board, pursuant to Article 5, Section 18 of the Pennsylvania Constitution. This is a case of first impression in this Commonwealth.

Petitioner contends that by issuing the suspension order prior to receiving a recommendation by the Judicial Inquiry and Review Board, this Court has deprived him of his office without due process of law. Consistent with this position, petitioner argues that this Court may only suspend a judge or other member of the minor judiciary pursuant to the provisions of Article 5, Section 18 of the Pennsylvania Constitution. We cannot agree.

It is true that Article 5, Section 18 establishes the procedure by which members of the judiciary may be

1. The Judicial Inquiry and Review Board is granted the power to investigate alleged misbehavior of improprieties while in office by members of the judiciary under Article 5, Section 18 of the Pennsylvania Constitution.

removed or subjected to disciplinary proceedings. However, Article 5, Section 18 in no way attempts to revoke or diminish the inherent authority of this Court to exercise its superintendency powers over the lower judiciary. The Court's supervisory powers in no uncertain terms are preserved by the Pennsylvania Constitution. Article 5, Section 1 of the Pennsylvania Constitution provides:

"The judicial power of the Commonwealth shall be vested in a unified judicial system consisting of the Supreme Court, the Superior Court, the Commonwealth Court, courts of common pleas, community courts, municipal and traffic courts in the City of Philadelphia, such other courts as may be provided by law and justices of the peace. All courts and justices of the peace and their jurisdiction shall be in this unified judicial system."

In order to insure a uniform judiciary and to preserve the integrity of its members, the people reserved the power of superintendency over inferior tribunals in the Supreme Court through Article 5, Section 10 of the Pennsylvania Constitution:

"(a) The Supreme Court shall exercise general supervisory and administrative authority over all the courts and justices of the peace, including authority to temporarily assign judges and justices of the peace from one court or district to another as it deems appropriate."

See Commonwealth ex rel. Specter v. Dennis, 10 Pa. Cmwlth. 439, 442, 308 A.2d 915, 917 (1973).

The Supreme Court's inherent power over the inferior courts and judicial officers can be traced historically.[2] In Carpentertown Coal & Coke Co. v. Laird, 360 Pa. 94, 99–100, 61 A.2d 426, 428–29 (1948), the Court sketched the history of this Court's superintendency powers:

"It is suggested by the Turnpike Commission that although this Court has assumed the power to issue

2. See, The Judiciary, Reference Manual No. 5, The Pennsylvania Constitutional Convention 167 (1967–68).

writs of prohibition the question as to its constitutional right so to do has not heretofore been challenged or discussed. Be that as it may, the justification for the Court's exercise of such power is to be found in the Act of May 22, 1722, 1 Sm.L. 131, 140, section XIII, which vested in the Supreme Court all the jurisdictions and powers of the three superior courts at Westminster, namely, the King's Bench, the Common Pleas and the Exchequer. Inherent in the Court of King's Bench was the power of general superintendency over inferior tribunals, a power which was of ancient inception and recognized by the common law from its very beginnings. Blackstone says, Book III, *42: 'The jurisdiction of this court [of King's Bench] is very high and transcendent. It keeps all inferior jurisdictions within the bounds of their authority, and may either remove their proceedings to be determined here, or prohibit their progress below.' By the Act of 1722 the Supreme Court of Pennsylvania was placed in the same relation to all inferior jurisdictions that the King's Bench in England occupied, and thus the power of superintendency over inferior tribunals became vested in this Court from the time of its creation: *Commonwealth v. Ickhoff*, 33 Pa. 80, 81; *Chase v. Miller*, 41 Pa. 403, 411. In the exercise of its supervisory powers over subordinate tribunals the Court of King's Bench employed the writ of prohibition and such right and practice accordingly passed to the Supreme Court; *First Congressional District Election*, 295 Pa. 1, 13, 144 A. 735, 739; *McNair's Petition*, 324 Pa. 48, 64, 187 A. 498, 505. The provision of the Constitution limiting the original jurisdiction of the Court did not affect the existence of this right; the Constitution did not remove from the Court its supervisory functions over lower courts . . .. The power of controlling the action of inferior courts is so general and comprehensive that it has never been limited by

prescribed forms of procedure or by the particular nature of the writs employed for its exercise."

*Petition of Squires and Constables Association of Pennsylvania, Inc., Allegheny County Chapter*, 442 Pa. 502, 275 A.2d 657; *see also Smith v. Gallagher*, 408 Pa. 551, 573, 185 A.2d 135, 145 (1962); *Commonwealth ex rel. Specter v. Dennis*, 10 Pa.Cmwlth. 439, 308 A.2d 915 (1973).[3]

The inherent power of the State Supreme Court to supervise the conduct of officers of its judicial system has been recognized in other jurisdictions.[4] The Massachusetts Supreme Judicial Court in the case of *In the Matter of DeSaulnier*, 274 N.E.2d 454, 456 (1971), found that it

**3.** In Petition of Squires and Constables Association of Pennsylvania, Inc., Allegheny County Chapter, 442 Pa. 502, 275 A.2d 657 (1971), petitioners contended that the Supreme Court had no right, power or authority under the Constitution of 1968 or otherwise, to render any decision or promulgate any rule which changes or diminishes any rights, privileges or powers which they had possessed prior to the Constitution of 1968. The majority rejected this contention on the basis of Article V, Section 1 and Article V, Section 10 of the Pennsylvania Constitution. *Id.* at 511, 275 A.2d at 662.

Justice Pomeroy, however, in his concurring opinion concluded that:

"[I]n my view this Court possessed inherent power, quite aside from the provisions of the new Article V of the Constitution, to declare the incapatibility of political activity or governmental employment, on the one hand, and the holding of judicial office on the other hand. The source of this power is to be found in the Provincial Act of May 22, 1722, 1 Sm.L. 140, which invested this court with the jurisdiction and powers for all purposes which were exercised by the Justices of the Court of King's Bench at Westminster. See, e. g., *Carpentertown Coal & Coke Co. v. Laird*, 360 Pa. 94, 99–100, 61 A.2d 426 (1948); *Carbon County Judicial Vacancy*, 292 Pa. 300, 302–303, 141 A. 249 (1928). See also *Commonwealth ex rel. Fox v. Swing*, 409 Pa. 241, 186 A.2d 24 (1962) (dissenting opinion). *Id.* at 511–512, 275 A.2d at 662."

**4.** *See, e. g., In re DeSaulnier*, 360 Mass. 787, 279 N.E.2d 296 (1972); *In re Mussman*, 112 N.H. 99, 289 A.2d 403 (1972); *In re Municipal Court of Cedar Rapids*, 188 N.W.2d 354 (Iowa 1971); *Ransford v. Graham*, 374 Mich. 104, 131 N.W.2d 201 (1964); *In re Mattera*, 34 N.J. 259, 168 A.2d 38 (1961).

had the authority to consider disciplinary action against superior court associate justices:

"We now rule that this court has jurisdiction to impose appropriate discipline upon a member of the bar, who is also a judge, for misconduct or acts of impropriety, whether such acts involve his judicial conduct or other conduct. This we hold, even though, because he is a judge, he is not permitted to engage in the practice of law."

This conclusion was premised on the Court's prior determination that,

"[t]he power, authority, and jurisdiction of this court to make the inquiry and to hold hearings rest on at least the following grounds, among others: (a) *the inherent common law and constitutional powers of this court, as the highest constitutional court of the Commonwealth, to protect and preserve the integrity of the judicial system and to supervise the administration of justice;* (b) the supervisory powers confirmed to this court by G.L. c. 211, § 3, as amended; (c) the power of this court to maintain and impose discipline with respect to the conduct of all members of the bar, either as lawyers engaged in practice or as judicial officers; and (d) the power of this court to establish and enforce rules of court for the orderly conduct (1) of officers and judges of the courts and (2) of judicial business and administration." (Emphasis added). *Id.* at 456.

■■ The establishment by this Court[5] of rules of procedure to govern the Judicial Inquiry and Review Board and to protect the procedural rights of the mem-

---

5. Article V, Section 18 of the Pennsylvania Constitution provides in relevant part:

"(j) The Supreme Court shall prescribe rules of procedure under this section.

(k) The Supreme Court shall prescribe rules of procedure for the suspension, removal, discipline and compulsory retirement of justices of the peace."

bers of the judiciary cannot provide a basis for defeating this Court's authority to take the action necessary to properly supervise the lower judiciary. *Cf. In re Disbarment Proceedings*, 321 Pa. 81, 101, 184 A.2d 59, 68 (1936). The rules in question were promulgated to provide an efficient and fair procedure to govern the operation of the Judicial Inquiry and Review Board. That procedure has not been abrogated here. Rather, we have merely exercised our supervisory authority to protect and promote the public confidence in our judicial system, pending resolution of the proceedings before the Judicial Inquiry and Review Board. As the highest court of this Commonwealth, we would be remiss in our duty if we neglected to exercise our inherent supervisory power on the theory that another means to resolve the problem may be available, when the alternative solution would not adequately meet the exigencies of the circumstances presented. Here, the petitioner's rights have been fully protected by the immediate referral of the matter of the Judicial Inquiry and Review Board. The suspension in the instant case cannot be considered a *final* determination as to the right of petitioner to hold his office since the suspension remains effective only until a disposition is made by the Board.[6] Thus, petitioner will be granted a hearing, a full opportunity to present evidence in his be-

---

**6.** *Cf. Chandler v. Judicial Council of the Tenth Circuit of the United States*, 382 U.S. 1003, 86 S.Ct. 610, 15 L.Ed.2d 494 (1965), in which United States District Judge Stephen S. Chandler petitioned the United States Supreme Court for a stay of an "Order" of the Judicial Council of the Tenth Circuit directing that until further order of the Council, Judge Chandler " 'take no action whatsoever in any case or proceeding now or hereafter pending' in his court, that cases now assigned to him be assigned to other judges, and that no new actions filed be assigned to him." The majority refused to stay the Order finding it to be interlocutory and expressing no opinion concerning the propriety of the interlocutory action taken. However, as Justice Black accurately expressed in his dissent: "By refusing to stay the Council's order, the Court necessarily acts on the premise that the Council has the legal right to remove Judge Chandler from office at least temporarily." *Id.* at 1004, 86 S.Ct. at 610.

half and to cross-examine witnesses against him.[7] The order of suspension in the instant case will in no way jeopardize petitioner's case. The sole purpose of such an order is to maintain the probity and judicial appearance of our justices of the peace for the protection of the people of this Commonwealth. If the judicial system of this Commonwealth fails to maintain a high standard of professional ethics and propriety, then we can expect little faith and confidence to be placed in our proceedings by the members of the practicing bar or the public.

It is true that one who is a member of the judiciary does not forfeit the rights he had as a citizen. It is not the personal habits of the individual with which we are concerned, but the acts done as a member of the judiciary which causes our attention to focus on such a member. *See, e. g., Mahoning County Bar Association v. Franko,* 168 Ohio St. 17, 151 N.E.2d 17 (1958). The Supreme Court of Massachusetts succinctly explained the ambit of judicial behavior with which this Court must be concerned:

"Unquestionably a judge is entitled to lead his own private life free from unwarranted intrusion. But even there, subjected as he is to constant public scrutiny in his community and beyond, he must adhere to

---

7. Rule of Procedure Governing The Judicial Inquiry and Review Board 7.

In view of the importance of the Commonwealth's interest in maintaining the integrity of the judiciary, and because the petitioner will be afforded a full hearing with the opportunity to present evidence in his behalf and to confront the witnesses against him prior to any *final* determination affecting his position, we believe that petitioner's constitutional rights to the due process and equal protection of the law have not been violated. *See Boddie v. Connecticut,* 401 U.S. 371, 378–79 & n. 6, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *Goldberg v. Kelly,* 397 U.S. 254, 263 & n. 10, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Thus, we find petitioner's argument, that the order of this Court suspending him from his office denied him of his state and federal constitutional rights, to be unpersuasive.

standards of probity and propriety higher than those deemed acceptable for others. More is expected of him and, since he is a judge, rightfully so. A judge should weigh this before he accepts his office." *In re Troy*, 364 Mass. 15, 306 N.E.2d 203, 235 (1973).

The order which this petitioner seeks to vacate was not meted out as a form of punishment.[8] Rather, we are constrained to exercise our powers of supervision under the circumstances present here in order to guard and protect "the just rights and independence of the bar, the dignity and authority of the court, and the safety and protection of the public. . . ." *In re Samuel Davies*, 93 Pa. 116, 121 (1880). A judge or justice of the peace in fulfilling his judicial function must not only strive to insure fair treatment toward every individual who appears before him, but he must also present the appearance of fairness and probity in his behavior as a judicial officer. If that appearance falters, the confidence of the public will naturally wane.[9] We have been entrusted by the people of this Commonwealth with the obligation to prevent such an occurrence. The petition to

---

**8.** *Cf.* Miller, Discipline of Judges, 50 Mich.L.Rev. 737, 739 (1952): "As . . . noted, where the constitution of a state sets *forth the grounds for discipline of a judge and the procedure to* be invoked therefore, the legislature has no power to provide other grounds for discipline or other methods of trial. However, it should be observed that supervision of courts and judges by the court of last resort is not regarded as synonymous with discipline thereof. Many state constitutions provide for general supervision of the work of trial courts and judges by the court of last resort and its chief justice."

**9.** *See* Clark, Judicial Self-Regulation—Its Potential, 35 L. & Cont. Prob. 37 (1970). *See also* Miller, Public Confidence in the Judiciary: Some Notes and Reflections, 35 L. & Cont.Prob. 69 (1970): "That some judges—however few in number is beside the point, for even one rotten judicial apple can go far toward spoiling the entire judicial barrel—fall short of the requisite standards of integrity and propriety (nebulous and ill defined though they may be) creates a large part of the problem of public confidence."

vacate the order of suspension is, therefore, denied, and the order of this Court suspending petitioner from office until final order of this Court is affirmed.

NIX, J., did not participate in the consideration or decision of this case.