**IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT**

| | |
|---|---|
| IN RE: MAGISTERIAL DISTRICT JUDGE MARK A. BRUNO, MAGISTERIAL DISTRICT 15-1-01 | : No. 84 MM 2013 |
| | : |
| | : Petition to Vacate the Order of the Supreme Court Dated 2/1/13 |
| PETITION OF: MARK A. BRUNO | : |
| | : ARGUED: September 10, 2013 |

**CONCURRING OPINION**

DECIDED: August 28, 2014

**MR. JUSTICE SAYLOR**                    OPINION FILED: October 1, 2014

I agree with the majority's holding that this Court retains jurisdiction and power at King's Bench to direct the interim suspension of jurists in extraordinary circumstances. My thinking is also aligned with much of the majority's reasoning, but I note the difficulty inherent in attaining full assent to an opinion of such ambitious breadth as the majority's. Presently, I write to elaborate on some of my differences both in approach and substance.

Initially, I believe that Judge Bruno, the Judicial Conduct Board, and amicus, the Special Court Judges Association, have presented serious, focused, and comprehensive advocacy supporting the position that the constitutionally prescribed procedures for interim suspensions and discipline should be deemed exclusive.[1] While

---

[1] Judge Clement of the Court of Judicial Discipline also presented a well-developed line of reasoning in his concurrence in In re Bruno, 69 A.3d 780 (Pa. Ct. Jud. Disc. 2013) (Clement, J., concurring), albeit, as concerns the King's Bench power, ultimately this (continued…)

recognizing that such contention has been rejected in previous decisions, moreover, I observe that the doctrine of stare decisis has lesser force in matters of constitutional (as opposed to statutory) interpretation, given that, short of recourse to the cumbersome process of amending the constitution, this Court is the only body positioned to adjust previous constructions in light of new information or experience. Accord, e.g., Hunt v. PSP, 603 Pa. 156, 174, 983 A.2d 627, 637-38 (2009).[2]

Ultimately, in light of the placement of the Court of Judicial Discipline within the Unified Judicial System over which this Court presides, and in the absence of any affirmative restraint upon King's Bench, I agree that this Court's power of interim suspension persists. Upon reflection, and in light of the current presentations and the underlying circumstances as they have unfolded, however, I believe that it was error on our part to routinize a practice of interim suspension upon the indictment of judges on felony charges. I supported that practice, particularly in cases involving allegations of judicial corruption, because I found it unseemly for judges under the cloud of indictments to sit in judgment of their fellow citizens. Nevertheless, I have come to the

---

(…continued)
reasoning rested on advocating for restraint, as opposed to asserting a disability. See id. at 808-09 (Clement, J., concurring).

[2] With regard to the majority's observation that the word "exclusive" does not appear in the text of Article V, Section 18, see Majority Opinion, slip op. at 72 n.24, I would observe that treatment of a constitutionally-designated power as exclusive in the absence of an express prescription for such exclusivity is not without precedent. For example, this Court's constitutional "power to prescribe general rules governing practice, procedure and the conduct of all courts," PA. CONST. art. V, §10(c), is also not expressly made to be exclusive, and yet this Court has so interpreted it. See, e.g., Payne v. Dep't of Corr., 582 Pa. 375, 385, 871 A.2d 795, 801 (2005) (rules of procedure); In re Suspension of Capital Unitary Review Act, 554 Pa. 625, 629, 722 A.2d 676, 679 (1999) (same); Reilly by Reilly v. SEPTA, 507 Pa. 204, 219, 489 A.2d 1291, 1298 (1985) (rules for supervising the conduct of courts).

view that, especially in the areas of interim suspension and discipline expressly directed by the Constitution to a separate constitutional body, the Court of Judicial Discipline's role should be given primacy, and I find salience in the suggestion that any exercise of King's Bench authority on our part should occur only in "extraordinary circumstances." Majority Opinion, slip op. at 76.[3] For example, the Court of Judicial Discipline appears better equipped to make factual determinations in the context of judicial disciplinary proceedings while preserving the jurist's procedural safeguards and a restrained course on our part would minimize the prospect for overlapping and/or inconsistent orders.

I am aware that this process can be slower than necessary to protect the integrity of the Unified Judicial System, as indeed a four-month delay ensued between Judge Bruno's indictment and his suspension by the Court of Judicial Discipline, and his presiding over court proceedings during that interval would have raised the same difficulties that became evident in In re Franciscus, 471 Pa. 53, 369 A.2d 1190 (1977). See id. at 55, 369 A.2d at 1191 (reflecting that this Court had suspended Judge Franciscus from office because he was indicted on federal charges relating to his judicial duties, but continued to preside over court proceedings). However, as this Court presently recognizes, we can alleviate any such concerns through our general supervisory and administrative powers under Section 10(a) by directing that the judicial officer in question be assigned to duties which do not entail presiding over court proceedings. See Majority Opinion, slip op. at 78 n.26; PA. CONST. art. V, §10(a) (providing that this Court "shall exercise general supervisory and administrative authority over all the courts and justices of the peace"). Although this type of action is more limited than an interim suspension order in that it would leave the jurist's pay

---

[3] I also favor making all assertions of the exceptional King's Bench powers express, so that any order reflecting their exercise would indicate this basis.

unaffected – whereas an interim suspension may be without pay – to my mind such limitation is not especially problematic when compared with the prospect of conflicting orders issuing from this Court and the Court of Judicial Discipline, as occurred vis-à-vis Judge Bruno. While the majority suggests that concurrent operation of the Supreme Court and the Court of Judicial Discipline in the suspension arena can occur "comfortably," Majority Opinion, slip op. at 84, in my opinion the Judicial Conduct Board rightly observes that such conflicting orders are "inexplicable to the public." Brief for Judicial Conduct Board at 62.

In terms of more acute differences, I would incorporate the extraordinary-circumstances overlay into the actual holding from the outset of the opinion and scale back on the breadth of the statement of the holding. See Majority Opinion, slip op. at 2. For example, the statement that this Court "has exclusive jurisdiction at King's Bench to resolve the instant dispute, which implicates supervisory actions of the Court relating to personnel of the Unified Judicial System," id., can be read as being in tension with the core recognition of the Court of Judicial Discipline's jurisdiction and power relative to interim suspensions.

The majority opinion also uses the concept of the subsistence of King's Bench powers as a vehicle to suggest that there are limits on the General Assembly's ability to remove jurisdiction by statute, notwithstanding its contemporaneous explanation that this Court may exercise jurisdiction "until otherwise provided by law." Majority Opinion, slip op. at 70. While there may indeed be some limits on the legislative curtailment of our jurisdiction, those limits are not being tested here. The majority nonetheless deems it relevant to specify that:

> Jurisdiction granted **by statute** may be removed by the General Assembly or via constitutional amendment, either expressly or by necessary implication. By comparison, the

> jurisdiction necessary to the exercise of the Court's King's Bench powers . . . may be divested only by the people, expressly or by necessary implication.

Id. at 66 (bolding in original, citation omitted). Far from trying to eliminate such powers, the General Assembly has confirmed them. See 42 Pa.C.S. §502. Therefore, I do not see any present need to make a definitive pronouncement as to what powers may or may not be impacted by the authority relegated by the Constitution to the General Assembly relative to this Court's jurisdiction.

I also question whether the Court's supervisory authority should be seen as part of, or interchangeable with, its King's Bench powers. See, e.g., Majority Opinion, slip op. at 2 (referring to the supervisory authority as an "aspect of" King's Bench power), 71, 75 (referring to these concepts in essentially an interchangeable manner). In my view, this Court's supervisory powers and duties arise by specific constitutional mandate (Article V, Section 10(a)) and are designed to handle ordinary matters involving the supervision of Pennsylvania courts and justices of the peace, including such things as the temporary assignment of jurists to various courts as workload demands. Accord Stander v. Kelley, 433 Pa. 406, 428, 250 A.2d 474, 487 (1969) (Roberts, J., concurring) (referring to Section 10(a) as addressing, inter alia, the "transfer [of] judicial manpower in light of the overall needs of the Commonwealth"). King's Bench, on the other hand, should be reserved for extraordinary circumstances – and all the more so where, as here, the type of action involved is, by constitutional design, expressly allocated to a distinct investigative/disciplinary structure.

Madame Justice Todd joins this concurring opinion.